**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------x
                         :

In re:                        :
                         :

HO WAN KWOK, *et al.*,        :    Case No. 22-01581 (KAD)
                         :

          Debtors.[1]        :
                         :
------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S RESPONSE IN OPPOSITION TO INDIVIDUAL
DEBTOR'S MOTION FOR LEAVE TO FILE APPEAL OF ORDER GRANTING IN
PART MOTION FOR PROTECTIVE ORDER AND, IN THE ALTERNATIVE,
<u>PETITION FOR WRIT OF MANDAMUS</u>**

---

[1]  The Debtors in these jointly administered chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "<u>Debtor</u>") and Genever Holdings Corporation (the "<u>Genever BVI Debtor</u>"). The mailing address for the Trustee and the Genever BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

    A.    The Debtor's Malpractice Action against Clark Hill ............................................. 3

    B.    The Debtor's Bankruptcy Case and Appointment of the Trustee ......................... 4

    C.    The Trustee's Rule 2004 Discovery ..................................................................... 5

    D.    Trustee's Repeated Attempts to Gain Access to Pleadings, Expert Reports and Evidence in Malpractice Action ...................................................................... 7

    E.    Adjudication of the Motion ................................................................................... 9

ARGUMENT ........................................................................................................................... 9

I.    NO GROUNDS SUPPORTING LEAVE TO APPEAL EXIST AND REQUEST SHOULD BE DENIED ....................................................................................... 10

    A.    Asylum Protective Order Does Not Involve Controlling Question of Law as to Which There is Substantial Ground for Difference of Opinion ................. 11

        i.    Title 8 Regulations are Inapplicable Here ............................................... 11

        ii.    Debtor Has Waived Purported Privacy Rights ........................................ 14

        iii.    Trustee Stands in Shoes of Debtor ........................................................... 15

    B.    Immediate Appeal Will Not Materially Advance Ultimate Termination of Litigation .......................................................................................................... 16

II.    NO BASIS FOR EXTRAORDINARY MANDAMUS RELIEF ................................. 17

    A.    Debtor Has Not Raised An Issue of Importance .................................................. 18

    B.    No Privilege Will Be Lost Absent Mandamus Relief ......................................... 19

    C.    Asylum Protective Order Does Not Undermine Any Privilege ........................... 21

Conclusion ............................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
    No. 317CV02366BASKSC, 2021 WL 1312531 (S.D. Cal. Apr. 8, 2021) .............................12

*Anim v. Mukasey*,
    535 F.3d 243 (4th Cir. 2008) ..................................................11

*Bakhit v. Safety Marking, Inc.*,
    No. 3:13CV1049 (JCH), 2015 U.S. Dist. LEXIS 192934 (D. Conn. Feb. 17,
    2015) ..................................................13, 14

*Belbachir v. United States*,
    No. 08 C 50193, 2012 U.S. Dist. LEXIS 160792 (N.D. Ill. Nov. 9, 2012) .............................15

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
    964 F.2d 159 (2d Cir. 1992) ..................................................17, 18

*Cheney v. United States Dist. Court for the Dist. of Columbia*,
    542 U.S. 367 (2004) ..................................................17

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670 (PKC) (GWG), 2012 WL 137574 (S.D.N.Y. Jan. 12, 2012) ...............12, 15

*Franco-Gonzalez v. Holder*,
    No. CV 10-02211 DMG, 2015 WL 11116636 (C.D. Cal. Mar. 30, 2015) .............................14

*Garcia v. Padilla*,
    No. 2:15-cv-735-FtM-29CM, 2016 U.S. Dist. LEXIS 29398 (M.D. Fla. Mar.
    8, 2016) ..................................................14

*In re Ho Wan Kwok*,
    No. 22-50073 (JAM) (Bankr. D. Conn.) ..................................................5

*Hong Mai Sa v. Doe*,
    406 F.3d 155 (2d Cir. 2005) ..................................................17

*Khabibov v. Aviles*,
    No. 15-1298, 2015 WL 3492512 (D. N.J. June 2, 2015) .............................15

*L-T-M v. Whitaker*,
    760 Fed. Appx. 498 (9th Cir. Jan. 14, 2019) ..................................................12

*Meder v. City & Cty. of San Francisco, Human Serv. Agency*,
    No. 20-cv-01200-WHO, 2020 WL 5417131 (N.D. Cal. Aug. 21, 2020) .............................11

*Osuji v. U.S. Bank, Nat'l Ass'n*,
    285 F. Supp. 3d 554 (E.D.N.Y. 2018) ..................................................10, 11

*Rodriguez v. Robbins*,
No. CV 07-3239 TJH, 2012 U.S. Dist. LEXIS 197187 (C.D. Cal. May 3,
2012) ................................................................................................................12, 13

*Wengui v. Clark Hill PLC*,
1:19-cv-03195-JEB (D.D.C.) ...........................................................................3, 4

*Zhen Nan Lin v. United States DOJ*,
459 F.3d 255 (2d Cir. 2006) .................................................................................11

**Statutes**

28 U.S.C.
§ 158(a) ...............................................................................................................10
§ 1292(b) .............................................................................................................10

11 U.S.C.
§ 362 .................................................................................................................5, 16

**Other Authorities**

8 CFR
§ 2.1 ....................................................................................................................12
§ 208.6 ...................................................................................................... *passim*
§ 1208.6 .................................................................................................... *passim*

Fed. R. Bankr. P. 2012 ................................................................................................16

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), respectfully submits this response in opposition (the "Opposition") to the Debtor's *Motion For Leave to File Appeal of Order Granting in Part Motion for Protective Order and, In the Alternative, Petition for Writ of Mandamus* [Docket No. 8] (the "Motion").  In support of this Opposition, the Trustee submits the *Declaration of Avram E. Luft in Support of Opposition to Protective Order Appeal* (the "Luft Declaration"),[2] and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor's interlocutory appeal or, in the alternative, request for a writ of mandamus undoing the Bankruptcy Court's Asylum Protective Order,[3] is the latest in  the Debtor's efforts to prevent the Trustee from administering the Debtor's estate.  The arguments the Debtor seeks to raise on appeal are identical to the ones the Bankruptcy Court already thoughtfully considered and properly rejected below, and the resulting Asylum Protective Order is fully consistent with applicable law and more than adequate to protect the Debtor's (and his family's) interests in his asylum application and the information contained therein (the "Asylum Application").  Accordingly, any appeal—if and when it proceeds—is meritless.  For present purposes, however, all that matters is the Debtor is entitled to neither an interlocutory appeal nor the extraordinary relief of mandamus, and therefore the Motion should be denied.

2.      To maintain an interlocutory appeal, the Debtor must show that his proposed appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the Asylum Protective Order may materially advance

---

[2] The Luft Declaration is being filed contemporaneously herewith.

[3] Capitalized terms not defined in the Preliminary Statement have the meanings given to them in the remainder of this Opposition.

the ultimate termination of the litigation.   The Debtor falls far short of satisfying these requirements.   Contrary to the Debtor's assertion, there is no controlling legal issue that needs to be addressed as there is no statutory prohibition to the disclosure of the Debtor's asylum application to the Trustee.   Moreover, the Debtor faces no risk of harm from the production of his asylum application to the Trustee because (a) the information in the Debtor's asylum application is already public, by the Debtor's own admission, and (b) the confidential treatment of the Debtor's asylum application is already provided for by existing protective orders in both the malpractice action the Debtor filed in the District Court for the District of Columbia (an action predicated on adjudicating issues related to when, not if, the information in the Asylum Application was made public) and the protective order in the Bankruptcy Court.

3.      The Debtor argues that the question of law this appeal presents is the application of 8 CFR §§ 208.6 and 1208.6 (the "Title 8 Regulations"), which he contends precludes disclosure of the Asylum Application to the Trustee.   Not so.   The Title 8 Regulations are inapposite for several reasons.   As an initial matter, they regulate governmental entities within the Department of Homeland Security and Department of Justice that receive and adjudicate asylum applications, and are thus inapplicable here.   In addition, even if the Title 8 Regulations applied here in the first instance, the plain language of subsection 208.6(c)(2)(ii) excepts the disclosure restrictions from situations where, as here, the asylum application is a part of an underlying litigation, such as the Malpractice Action.   Finally, the Title 8 Regulations do not prohibit disclosures pursuant to court orders, a well-recognized exception in this and other contexts.

4.      Neither will this appeal materially advance the resolution of the bankruptcy case. In fact, it will do the opposite.   The Debtor concedes that the Malpractice Action is an asset of the estate controlled by the Trustee for all purposes, including for the purposes of maximizing the

value of the Malpractice Action through settlement, and the Asylum Application forms an essential component of the claim the Debtor has asserted in that action.  Specifically, the Debtor contends in the Malpractice Action that his former immigration counsel, Clark Hill, breached duties owed to the Debtor by allowing the contents of the Asylum Application to be leaked to the public.  The Asylum Application is discussed and dissected in pleadings, depositions, and expert reports submitted in the Malpractice Action, including in Clark Hill's motion for summary judgment. Because the Asylum Application sits at the heart of the Malpractice Action, the Trustee cannot manage and control the Malpractice Action for the benefit of the estate in accordance with his fiduciary duties unless and until he has access to the Asylum Application.  To the extent an appeal will prevent that from happening, it will stifle, not promote, progress in the bankruptcy case.

5.      The Debtor's petition for mandamus should also be denied.  A writ of mandamus is an extraordinary form of relief, limited to circumstances where a court has usurped its authority or clearly abused its discretion.  These circumstances plainly do not exist here.   The Bankruptcy Court presided over an extensive hearing on the Motion for Protective Order before granting the Debtor's request for relief, in part, and ordering the submission of the Asylum Application to only the Trustee and his counsel, subject to the Malpractice Protective Order, as applicable.  The Debtor has made no showing that the Bankruptcy Court abused its discretion.  Accordingly, for all the reasons asserted herein, the Motion should be denied.

## BACKGROUND

### A.  The Debtor's Malpractice Action against Clark Hill

6.      On September 19, 2019, the Debtor filed a complaint against his former counsel Clark Hill PLC ("Clark Hill") alleging malpractice and seeking damages arising from a breach of Clark Hill's computer server resulting in the public dissemination of the Debtor's asylum application information on the internet (the "Malpractice Action"). The Malpractice Action was

removed to the United States District Court for the District of Columbia (the "District Court") on October 24, 2019.[4]

7.     The Debtor retained Ari Casper from The Casper Firm, LLC ("Casper") to represent him in the Malpractice Action, and Clark Hill retained Jenner & Block LLP ("Jenner & Block") as defense counsel.

8.     The Debtor alleged that, "[a]s a direct and proximate cause of [Clark Hill's] multiple breaches of their duties and legal obligations, the details and contents of [the Debtor's] asylum application and other materials have been disclosed widely on social media platforms and placed in the hands of third-parties hostile to [the Debtor]."[5]

9.     Up until the Debtor filed for bankruptcy, the parties to the Malpractice Action actively litigated the case: discovery proceeded and depositions were taken, which was then followed by service of expert reports from the parties and expert discovery.[6]

10.     On February 15, 2022, Clark Hill moved for summary judgment and to exclude the Debtor's experts (the "Clark Hill MSJ"), citing to, and attaching the Debtor's asylum application as an exhibit.[7]

**B. The Debtor's Bankruptcy Case and Appointment of the Trustee**

11.     On February 15, 2022, the Debtor filed for bankruptcy in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), immediately triggering

---

[4] *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C.).

[5] Luft Decl., **Exhibit A**, Complaint in Malpractice Action at ¶ 57.

[6] In furtherance of the litigation, on May 26, 2020, the District Court entered the Stipulated Protective Order. *See* Stipulated Protective Order, *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C.) [Docket No. 23] (the "Malpractice Protective Order").

[7] Because they referenced discovery designated as confidential, the pleadings were filed under seal. No public versions of these pleadings were ever filed, because counsel for the Debtor requested that he not be required to do so, given that he did not believe the Debtor would pay him for the work, given his bankruptcy filing.

the automatic stay under section 362 of the United States Bankruptcy Code (the "<u>Bankruptcy</u> <u>Code</u>").

12.      On June 15, 2022, the Bankruptcy Court issued the Trustee Order (*see* Bankr. ECF No. 465),[8] and, on July 7, 2022, the Office of the United States Trustee filed a Notice of Appointment of Chapter 11 Trustee appointing Luc A. Despins as Chapter 11 Trustee. (*See* Bankr. ECF No. 514).

13.      The Debtor in his bankruptcy schedules listed litigation claims, with unknown value, as property of his estate. (*See* Bankr. ECF No. 78 at 6).  In his Statement of Financial Affairs, the Debtor listed the Malpractice Action as an active litigation in which he was a plaintiff. (*See* Bankr. ECF No. 77 at 22).

14.      Upon his appointment, the Trustee stepped into the Debtor's shoes with respect to the Malpractice Action and has a duty to litigate the Malpractice Action to its fullest potential for the benefit of the Debtor's creditors and estate.

### C. The Trustee's Rule 2004 Discovery

15.      On July 28, 2022, the Trustee filed a motion for Rule 2004 discovery as to various legal and financial advisors to the Debtor, including Clark Hill (the "<u>Professionals 2004 Motion</u>") (*See* Bankr. ECF No. 637).  On August 16, 2022, the Court granted the Trustee's Professionals 2004 Motion. (*See* Bankr. ECF No. 756).  Pursuant to the Court's order, on August 19, 2022, Clark Hill was served with a Rule 2004 Subpoena and document requests attached thereto (the "<u>Subpoena</u>").[9]  The Subpoena sought information necessary for the Trustee to both evaluate

---

[8] References to "Bankr. ECF No. __" are to filings in the chapter 11 case styled *In re Ho Wan Kwok,* No. 22-50073 (JAM) (Bankr. D. Conn.).  References to "D.C. ECF No. __" are to filings in the Malpractice Action.  References to "ECF No. __" are to filings in the above-captioned interlocutory appeal.

[9] The Subpoena is attached to the Luft Declaration as **<u>Exhibit B</u>**.

and exercise control over the Malpractice Action, which is property of the estate. *See*

Subpoena, Request for Production 17.

16.     On September 14, 2022, the Bankruptcy Court entered the *Consent Order*

*Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule*

*2004 Subpoenaed Documents and Information* (the "Privileges Consent Order"). (*See* Bankr.

ECF No. 856).

17.     Among other things, the Privileges Consent Order holds that

> The Trustee has exclusive control of any attorney-client privilege or
> work product protection that could otherwise be asserted by the
> Debtor or his counsel under any applicable law (including, without
> limitation, any interests of the Debtor in any common interest or
> joint defense privilege alleged to be held with other parties) . . .
> concerning (i) assets ***(including actual or potential causes of***
> ***action) that (A) are or were held by the Debtor***, (B) are or were held
> by others that the Trustee is investigating pursuant to the Rule 2004
> Subpoenas for purposes of determining whether they hold or may
> have information about assets in which the Debtor holds or may
> have held an interest, or (C) otherwise relate to, or could be brought
> into, the Debtor's estate,[] (ii) the Debtor's financial condition
> (including, without limitation, liabilities of the estate), or (iii)
> activities related to the administration of the estate . . . during the
> period between the petition date and the issuance of the order
> appointing the Trustee on July 8, 2022 (topics (i) through (iii),
> collectively, the "Investigation Topics").

(*See* Privileges Consent Order at ¶ 2 (emphasis added)).

18.     The Privileges Consent Order also provides that

> Nothing herein shall prevent the Debtor from asserting any and all
> privileges concerning legal matters unrelated to the Investigation
> Topics, such as unrelated criminal allegations or the Debtor's
> asylum application (***other than documents related to the***
> ***[Malpractice Action] that relate to the merits of the legal***
> ***malpractice action***, as distinguished from the merits of the Debtor's
> asylum application, subject to the balancing test incorporated herein,
> which does not relate to the substance of the asylum application).
> The Trustee and the Debtor reserve all rights with respect to any
> privileges claimed over such other matters.

(*See* Privileges Consent Order at ¶ 4 (emphasis added)).

19.     When counsel for the Trustee was negotiating the Privileges Consent Order with counsel for the Debtor, counsel for the Trustee did not have access to all the pleadings in the matter, including, notably, the Clark Hill MSJ. Thus, the Trustee knew he had to carve out an exclusion of the transfer of the privilege to allow him access to information regarding the merits of that litigation. The Asylum Application itself goes directly to the merits of the litigation.[10]

20.     On October 6, 2022, the Bankruptcy Court entered the *Protective Order*, (Bankr. ECF No. 923) (the "Chapter 11 Protective Order"), which governs the exchange or disclosure of all information and documents in connection with the Bankruptcy Case, including discovery materials produced in response to the Subpoena.

### D. Trustee's Repeated Attempts to Gain Access to Pleadings, Expert Reports and Evidence in Malpractice Action

21.     Since late August, the Trustee has repeatedly attempted to obtain access to relevant documents in the Malpractice Action on a consensual basis. The Debtor has attempted to thwart the Trustee's efforts at each turn. Throughout September, the Trustee conferred with Casper and the Debtor's bankruptcy counsel to obtain the relevant information without court intervention. Although the Debtor's bankruptcy counsel had confirmed that "Mr. Kwok[']s claims in the litigation against Clark Hill are property of the bankruptcy estate[,]"[11] Casper, on behalf of the

---

[10] To the extent counsel for the Trustee made comments during the hearings concerning the Privileges Consent Order that the Trustee did not need access to the Asylum Application, those comments merely reflect the fact that the Trustee is not, and never has been, investigating the merits of the Debtor's Asylum Application itself. The Trustee is, however, investigating and taking steps necessary to assert control over assets of the estate, including the Malpractice Action. At the time of the hearings on the Privileges Consent Order, the Trustee's counsel was not aware of the extent of the relevance of the Asylum Application to the merits of the Malpractice Action and, thus, did not understand that the Trustee would clearly need to access to the Aslyum Application in order to manage and control the Malpractice Action. Any statements the Trustee's counsel made that he was not seeking access to the Asylum Application simply reflect that lack of knowledge and do not constitute a waiver of any rights.

[11] Luft Decl., **Exhibit C**, email from Aaron A. Romney, counsel to the Debtor, to Ari Casper, and Avram Luft, counsel to the Trustee (Sept. 21, 2022, 4:43 EST) (emphasis added).

Debtor, still refused to withdraw his objection to disclosure of the Asylum Application to the Trustee.

22.    The parties' conferences continued through October.  On October 27, 2022, counsel for Clark Hill asked counsel for the Debtor, among other things, "[w]hat is the basis for withholding [the Debtor's] asylum application. It was submitted to the immigration office several years ago as part of his seeking asylum. We don't see how it can be privileged."[12]  That same day, counsel for the Debtor responded: "[t]he asylum application isn't technically privileged but it is a highly confidential document that has absolutely nothing to do with the debtor's estate."[13] Therefore, the Debtor sought to withhold the documents not based on any assertion of privilege.

23.    Later that day, counsel for Clark Hill responded to counsel for the Debtor saying, in part,

> Contrary to your assertion that the asylum application "has absolutely nothing to do with the debtor's estate," the core allegation of the debtor's complaint against Clark Hill [in the Malpractice Action] is that the content of the asylum application was leaked and therefore damaged the debtor; one of Clark Hill's primary defenses is that the supposedly leaked information was voluntar[il]y put on the internet or otherwise publicly disclosed by the debtor.  Thus *the asylum application and the information from the asylum application that was supposedly leaked is fundamental to the [Malpractice Action]* . . . .[14]

24.    The dispute, however, remained unresolved into November, when, on November 2, 2022, counsel for the Debtor, for the first time, claimed that "[d]issemination of the [Individual]

---

[12] Luft Decl., **Exhibit D at D-7 – D-8**, email from John Storino, counsel to Clark Hill, to Aaron Romney, John Cesaroni, Eric Henzy, and Stephen Kindseth, among others (Oct. 27, 2022, 8:11 EST).

[13] Luft Decl., **Exhibit D at D-7**, email from Aaron Romney to John Storino, John Cesaroni, Stephen Kindseth, and Eric Henzy, among others (Oct. 27, 2022, 10:35 EST) (emphasis added).

[14] Luft Decl., **Exhibit D at D-5 – D-7**, email from Vincent Lazar to Aaron Romney, John Cesaroni, Eric Henzy, Stephen Kindseth, Avram Luft, Jonathon Kosciewicz, Douglass Barron, Ezra Sutton, and Nicholas Bassett, among others (Oct. 27, 2022, 7:13 EST) (emphasis added).

Debtor's Asylum application appears to violate Section 208.6 of Title 8 of the Federal Regulations."[15]   Later that night, counsel for the Debtor filed the Debtor's motion seeking a protective order preventing the production of the Clark Hill MSJ and the Asylum Application. (*See* Bankr. ECF No. 1063) (the "Motion for Protective Order").

### E.   Adjudication of the Motion

25.     On November 16, 2022, the Trustee filed his objection to the Motion for Protective Order. (*See* Bankr. ECF No. 1105.  The Debtor field a reply in support of the Motion for Protective Order on November 29, 2022.  (*See* Bankr. ECF No. 1174).  On November 30 and December 2, 2022, the Bankruptcy Court held a hearing on the Motion for Protective Order, and on December 9, 2022 issued its *Order Granting in Part Motion for Protective Order*. (*See* Bankr. ECF No. 1217) (the "Asylum Protective Order").  The Asylum Protective Order requires the production of the Clark Hill MSJ and the Asylum Application "only to the Trustee and his counsel."  (Asylum Protective Order at 2). Further, the Clark Hill MSJ and Asylum Application "are not to be discussed, shown, or produced in any way to other interested parties in these bankruptcy cases," (*id.*), and the production of the Clark Hill MSJ and Asylum Application is expressly subject to the Malpractice Protective Order.  (*Id.* at 3).

### ARGUMENT

26.     According to the Debtor, the purported "***sole*** issue underlying this dispute is whether Federal regulation entitles the . . . Debtor to keep his Asylum Application confidential from the Trustee and whether the Bankruptcy Court exceeded its authority by ordering Clark Hill's counsel to produce it."  (Mot. ¶ 40) (emphasis in original).  The Debtor is not so entitled, and, for this and other reasons, there is no basis for leave to appeal.  Further, the Bankruptcy Court was

---

[15] Luft Decl., **Exhibit D at D-1**, email from Aaron Romney to Avram Luft, among others (Nov. 2, 2022, 6:14  EST).

well within its authority to enter the Asylum Protective Order, which protects the Debtor from disclosure of the Asylum Application to ***anyone*** other than the Trustee and his counsel, and no facts or law support imposition of the extraordinary remedy of a writ of mandamus.

## I.   NO GROUNDS SUPPORTING LEAVE TO APPEAL EXIST AND REQUEST SHOULD BE DENIED

27.    A party may only appeal an interlocutory order of a bankruptcy court with leave of the district court. *See* 28 U.S.C. § 158(a).  "The decision as to whether to grant leave to appeal an interlocutory order of a bankruptcy court is committed to the discretion of the district court." *Osuji v. U.S. Bank, Nat'l Ass'n*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018) (citing *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003)).  "It is well settled that the relevant standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from United States District Courts to the United States Courts of Appeals, governs such appeals." *Id.* (citations omitted).  Pursuant to section 1292(b), an appellant's motion for leave to appeal can "only be granted if he establishes that 'the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Osuji*, 285 F. Supp. 3d at 558 (quoting *McKenzie–Gilyard v. HSBC Bank Nev., N.A.*, No. 08-CV-0160 (SLT), 2008 WL 2622931, at *2 (E.D.N.Y. July 1, 2008)).

28.    That standard is a high bar for appellants to meet.  "[B]ecause 'interlocutory appeals are strongly disfavored in federal practice,' appellants bear the burden of showing that 'exceptional circumstances' exist that warrant an interlocutory appeal, to 'justify a departure from the basic policy of avoiding appellate review until a final decision on the merits.'" *Id.* (citation omitted). "The second prong, requiring a substantial ground for difference of opinion, is satisfied where '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first

impression for the Second Circuit." *Id.* (citations omitted). "The third prong, assessing whether an appeal would materially advance termination of the litigation, is satisfied where the 'appeal promises to advance the time for trial or to shorten the time required for trial.'" *Id.* (citation omitted).

### A. Asylum Protective Order Does Not Involve Controlling Question of Law as to Which There is Substantial Ground for Difference of Opinion

29.     Congress designed the asylum confidentiality provisions in 8 C.F.R. §§ 208.6 and 1208.6 to prevent foreign government authorities and non-state actors from retaliating against asylum applicants and their families. *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008). Here, the Debtor's completely baseless assertions that the Trustee having the Asylum Application "increases the ***potential*** for unauthorized third parties to obtain copies of the Asylum Application," rings hollow.  (Mot. ¶ 33) (emphasis added).  The Title 8 Regulations do not restrict the Trustee's ability to seek and obtain the Clark Hill MSJ and Asylum Application.  By their plain language, the Title 8 Regulations do not apply to private actors in these circumstances, and compliance with the Asylum Protective Order in no way disturbs Congress' intent in enacting the Title 8 Regulations.

#### i.   *Title 8 Regulations are Inapplicable Here*

30.     Title 8 of the Code of Federal Regulations, "Aliens and Nationality," includes two chapters: Chapter I – Department of Homeland Security (Immigration and Naturalization), and Chapter V – Executive Office for Immigration review, Department of Justice.

31.     "Chapter I of title 8 of the Code of Federal Regulations ***applies to the INS and DHS***, and Chapter V ***applies to the EOIR and DOJ***." *Zhen Nan Lin v. United States DOJ,* 459 F.3d 255, 258 n.1 (2d Cir. 2006) (analyzing alleged breach of confidentiality afforded asylum applicants by Title 8 Regulations); *see also Meder v. City & Cty. of San Francisco, Human Serv.*

*Agency,* No. 20-cv-01200-WHO, 2020 WL 5417131, at *1 (N.D. Cal. Aug. 21, 2020) ("8 CFR §

208.6 . . . restricts disclosure *by the government* of information in asylum applications") (emphasis

added); *Egiazaryan v. Zalmayev,* No. 11 Civ. 2670 (PKC) (GWG), 2012 WL 137574, at *6

(S.D.N.Y. Jan. 12, 2012) ("By [8 CFR § 208.6], *the United States and its agencies and*

*departments* may not disclose an asylum application or its contents to third persons"); 8 CFR §

2.1 ("All authorities and functions of the Department of Homeland Security to administer and

enforce the immigration laws are vested in the Secretary of Homeland Security[, who] may . . .

delegate any such authority . . . [and] such delegation may be made by regulation, [and] a

delegation of authority or function may . . . be published in the Federal Register . . . .").

32.     Accordingly, the Title 8 Regulations that the Debtor cites for the proposition that

the Asylum Application is protected from disclosure concerns disclosure by *government officials*,

not private parties. *See Al Otro Lado, Inc. v. Mayorkas*, No. 317CV02366BASKSC, 2021 WL

1312531, at *4 (S.D. Cal. Apr. 8, 2021) ("In support of their argument that additional conditions

should now be imposed on the court-ordered disclosure, defendants rely heavily on federal

regulations limiting the disclosure of asylum information *by the government*. [citing 8 C.F.R. §§

208.6 and 1208.6]. Yet, as defendants admit, plaintiffs and their counsel are not subject to these

regulations." (emphasis in original)); *see also id.* ("Further, the plain text of the regulations does

not constrain the treatment of asylum information by private actors."). The federal regulation cited

by the Debtor does not prohibit Clark Hill, Jenner & Block, or any other private actor from

disclosing the Debtor's asylum application.

33.     Further, "[t]he asylum . . . confidentiality provisions do not foreclose court ordered

discovery." *Rodriguez v. Robbins,* No. CV 07-3239 TJH (RNBx), 2012 U.S. Dist. LEXIS 197187

at *9 (C.D. Cal. May 3, 2012); *see also L-T-M v. Whitaker,* 760 Fed. Appx. 498, 500 (9th Cir. Jan.

14, 2019) (finding government violated section 208.6 by making disclosure "to a third party without her written consent or an order of the [Immigration Judge]").  As the Court in *Rodriguez* noted, "statutory provisions, generally forbidding disclosure of information, do not bar judicial discovery absent an explicit prohibition against such disclosure[, and] [t]he asylum . . . provisions do not contain such an express limitation."  *Id.* at *10 (citations omitted).  In fact, "the interpretation of the asylum . . . statutory confidentiality provisions, to preclude court ordered disclosure, constitutes clear error."  *Id.* at 15.

34.    Moreover, court ordered disclosure "squarely fits within" the express exception Congress included in 8 CFR § 208.6(c)(2)(ii).  That section provides that the disclosure restrictions do "not apply to any disclosure to: . . . (2) Any Federal, State, or local court in the United States considering any legal action: . . . (ii) Arising from the proceedings of which the asylum application . . . is a part."  This exception precludes the applications of the Title 8 Regulations in the judicial discovery context and should be applied broadly.  *See Rodriguez,* 2012 U.S. Dist. LEXIS 197187 at *13 ("Congress intended subsection (ii) to encompass any legal action arising from proceedings in which the asylum application merely constitutes some "part," regardless of how active or meaningful the role it played. 8 C.F.R. § 208.6(c)(2)(ii). Someone, or entity, need not actually litigate the merits of the application before a tribunal for it to be "part" of a "proceeding.").  Here, the Court authorized the Trustee to serve the Subpoena, including Request for Production No. 17, seeking documents and communications related to the Malpractice Action.  (*See* Bankr. ECF No. 756).  Given the entry of the Asylum Protective Order, even if the Title 8 Regulations could apply to the Trustee, the Bankruptcy Court's orders should not be limited by the Title 8 Regulations.[16]

_____

[16] The Debtor's reliance on *Bakhit v. Safety Marking, Inc.*, No. 3:13CV1049 (JCH), 2015 U.S. Dist. LEXIS 192934 (D. Conn. Feb. 17, 2015) is misplaced. In *Bakhit*, the court denied defendants' motion to compel documents related to plaintiff Bakhit's asylum application, relying on 8 C.F.R. § 208.6. *See id.* at *9, and  its finding that that "defendants have not shown a substantial need for the documents sought in light of the information defendants have already

35.     Finally, any concerns regarding confidentiality of the Asylum Application are already addressed by multiple protective orders:  the Malpractice Protective Order (D.C. ECF No. 23), the Privileges Consent Order (Bankr. ECF No. 856), the Chapter 11 Protective Order (Bankr. ECF No. 874), and the limitations within the Asylum Protective Order (Bankr. ECF No. 1217).

36.     The extensive orders entered by the District Court and the Bankruptcy Court further militate against entry of an order granting the Motion.  The Title 8 Regulations do not restrict the Trustee or curtail the Bankruptcy Court's lawful orders, and the Motion should be denied.  *Cf. Franco-Gonzalez v. Holder,* No. CV 10-02211 DMG (DTBx), 2015 WL 11116636, at *1 (C.D. Cal. Mar. 30, 2015) (entering discovery order, subject to protective order, and requiring defendants to submit to plaintiffs certain information otherwise restricted by section 208.6).

### ii.   Debtor Has Waived Purported Privacy Rights

37.     Moreover, it is axiomatic that the Debtor may not place the Asylum Application at the core of the Malpractice Action, yet attempt to preclude its disclosure to a party to that litigation such as the Trustee.  It would be fundamentally unfair to withhold the Asylum Application from the Trustee based only on the Debtor's arbitrary control of his confidentiality protection under section 206.8.  *See Garcia v. Padilla,* No. 2:15-cv-735-FtM-29CM, 2016 U.S. Dist. LEXIS 29398 at *10 (M.D. Fla. Mar. 8, 2016) (granting motion to compel and overruling section 208.6 objection even where party asserted she had not "consented to release" of asylum information because application was relevant to allegations and defenses, and it would be fundamentally unfair for party

---

received throughout the course of discovery." *See id.* at *10.  Here, the Debtor placed his asylum application directly at issue in the Malpractice Action, and the Trustee is the successor-in-interest to the Debtor-Plaintiff in that action. The Debtor's asylum application is not only at the heart of the Debtor's allegations in the Malpractice Action, but is also an exhibit to the Clark Hill MSJ.  The Trustee clearly has a substantial need for the Debtor's asylum application. Namely, the Trustee cannot evaluate and make decisions regarding the Malpractice Action, which he now owns, unless he is able to evaluate the merits of the claims and defenses at issue, including the Clark Hill MSJ.

to rely on asylum application evidence "and at the same time withhold the content of the asylum application based on confidentiality protection" in party's control).

38.     In fact, Courts routinely find that the Title 8 Regulations do not apply when, as here, an individual places her application for asylum at issue in a legal action.  *See, e.g., Egiazaryan v. Zalmayev,* No. 11 Civ. 2670 (PKC) (GWG), 2012 WL 137574, at *5 (S.D.N.Y. Jan. 12, 2012) (affirming entry of discovery order that required disclosure of asylum application because materials "bear[ed] directly on the nature" of the claims and allegations and plaintiff "may not place a matter in issue and then successfully thwart discovery because it is . . . sensitive or privileged from disclosure."); *Belbachir v. United States,* No. 08 C 50193, 2012 U.S. Dist. LEXIS 160792 at *9-11 (N.D. Ill. Nov. 9, 2012) (reversing order authorizing filing of documents attached to dispositive motions under seal where information was already publicly disclosed and purpose of section 208.6—protecting asylum applicant—was moot); *Khabibov v. Aviles,* No. 15-1298, 2015 WL 3492512, at *4 (D. N.J. June 2, 2015) (applicant waived right to confidentiality under section 208.6 by submission of court filing).

39.     At bottom, the Debtor brought the Malpractice Action on the theory that the contents of his asylum application were made public to his detriment. The contents of the Asylum Application are therefore a central issue in the litigation.  It would be fundamentally unfair for the Asylum Application to be withheld from the Trustee, and the foregoing authorities establish that no controlling question of law as to which there is substantial ground for difference of opinion exists here.

### iii.  Trustee Stands in Shoes of Debtor

40.     Finally, the Trustee is not a true third party in this case, and, therefore, any disclosure of the Asylum Application to the Trustee would not implicate the Title 8 Regulations. The Trustee is the successor in interest to the Debtor and needs the Asylum Application to carry

out his responsibilities under the Bankruptcy Code.  Upon his appointment, the Trustee was automatically substituted as the Plaintiff in the Malpractice Action, which became an estate asset. *See* Fed. R. Bankr. P. 2012 ("[i]f a trustee is appointed in a chapter 11 case or the debtor is removed as debtor in possession in a chapter 12 case, the trustee is substituted automatically for the debtor in possession as a party in any pending action, proceeding, or matter").  Counsel for the Debtor has confirmed as much.[17]  The Debtor is free to designate the Asylum Application confidential or highly confidential as appropriate under the Chapter 11 Protective Order.  The Asylum Protective Order precludes the Trustee from sharing the Clark Hill MSJ and Asylum Application with ***anyone*** other than his counsel.  (Asylum Protective Order at 1-3).  For the independent reason that the Trustee is not a true third party as to the Debtor in his Bankruptcy Case, the Title 8 Regulations are inapplicable and no controlling question of law need be resolved.

## B. Immediate Appeal Will Not Materially Advance Ultimate Termination of Litigation

41.     The Debtor submits that allowing an immediate interlocutory appeal "will resolve the entirety of this dispute and provide clarity to other courts concerning the rights to which victims of political persecution are entitled."  (Mot. ¶ 40).  The Court should disregard such an exaggerated characterization of the appeal.  The Subpoena was served months ago pursuant to the Court's order authorizing the Rule 2004 order directed to the Debtor's advisors.  The Asylum Protective Order further established that the Debtor has no basis to disrupt compliance with the Subpoena, and only the Trustee and his counsel may obtain the Asylum Application and Clark Hill MSJ.  (Asylum Protective Order at 2).  The Trustee may not share either document with any third party.  *Id.*  This

---

[17] Luft Decl., **<u>Exhibit C</u>**, email from Aaron A. Romney, counsel to the Debtor, to Ari Casper, and Avram Luft, counsel to the Trustee (Sept. 21, 2022, 4:43 EST).

appeal advances nothing more than the Debtor's efforts to stop the inevitable administration of the estate for the benefit of his creditors.

## II. NO BASIS FOR EXTRAORDINARY MANDAMUS RELIEF

42.     "Mandamus is not used simply to correct error," *Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir. 2005) (internal quotation marks and citation omitted), but only to redress "a judicial usurpation of power, or a clear abuse of discretion."  *Cheney v. United States Dist. Court for the Dist. of Columbia,* 542 U.S. 367, 390 (2004) (internal quotation marks and citations omitted).

> A mandamus petition is granted only where the petitioner's right to relief is clear and indisputable. [. . .]  Indeed, an appellate court should not issue mandamus to correct even gross error, but should issue the writ when necessary to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.

*Hong Mai Sa v. Doe,* 406 F.3d at 158-59.  Here, the Bankruptcy Court's consideration of the parties' submissions and argument during a thorough hearing on the Debtor's request for a protective order was neither an "usurpation of power" nor a "clear abuse of discretion" or even "gross error." (*See generally* Asylum Protective Order). In fact, it was not error at all.  No grounds exist to grant the alternative relief sought by the Debtor.  The Debtor has not presented any evidence of an abuse of discretion by the Bankruptcy Court..

43.     The Debtor has also failed to establish his request for a writ as to any of the elements set forth by the Second Circuit for consideration of such extraordinary relief in the privilege and discovery order context.  "Unlike other circuits, [the Second Circuit has] rarely use[s] the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 163 (2d Cir. 1992) (citation omitted).  The Debtor's alternative request for a writ of mandamus therefore should be denied.

### A.  Debtor Has Not Raised An Issue of Importance

44.     Although the Trustee is unaware of the Second Circuit having interpreted the scope of the Title 8 Regulations in the context of a Rule 2004 subpoena served by a chapter 11 trustee, there is no issue of importance raised by the Motion that favors granting mandamus relief.  *Chase Manhattan Bank, N.A.,* relied upon by the Debtor, is easily distinguishable from the facts here.  In that case, the Second Circuit expressed concern because the magistrate judge below had not yet ruled on any of the appellant's privilege claims, and, thus, the disclosure to appellee would have broadly undermined the attorney-client privilege by authorizing a practice whereby documents that "may be clearly privileged" might be disclosed to an adversary before any privilege determinations had been made by the lower court.  694 F.2d at 1663-64.  Here, the Debtor concedes the attorney client privilege is not even at issue in this dispute.

45.     Moreover the Privileges Consent Order, Malpractice Protective Order, and Asylum Protective Order all diminish the importance of any purported issue the Debtor attempts to raise by this appeal.  The Malpractice Protective Order, [D.C. ECF No. 23], broadly protects protected information, including: "(3) information submitted to any governmental or regulatory agency, which information is exempt from public disclosure, . . . (5) information pertaining to ongoing government or court proceedings or investigation, . . . [and,] (7) other . . . personally sensitive information."  The Trustee, through counsel, has executed an acknowledgment of the Malpractice Protective Order and is bound by it.[18]  The Malpractice Protective Order further provides that:

> Any documents or information designated under this Order may be used solely for the preparation, trial, and any appeal of this action, as well as related settlement negotiations, and for no other purpose, including, but not limited to press releases, Internet or social media posting, or other publication of the material, without the written consent of the Designating Party.  No Designated Information may

---

[18] Luft Decl., ¶ 2.

> be disclosed to any person except in accordance with the terms of this Order. All persons in possession of Designated Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained.

Malpractice Protective Order, ¶ V.A. The Malpractice Protective Order independently renders the Motion unnecessary, much less objectively "important" enough for mandamus relief.

46.     The Asylum Protective Order is similarly restrictive, insulating the Debtor from any speculative harms (conjured up by the Debtor for the purposes of this appeal). The Asylum Protective Order orders the production of the Clark Hill MSJ and the Asylum Application "only to the Trustee and his counsel," who are subject to the Malpractice Protective Order, and the Clark Hill MSJ and Asylum Application "are not to be discussed, shown, or produced in any way to other interested parties in these bankruptcy cases[.]" (Asylum Protective Order at 2-3 (production is expressly subject to the Malpractice Protective Order)). There is simply no basis to believe that compliance with the Asylum Protective Order may result in any harm to the Debtor (none exists), much less an imminent harm. Given the inapplicability of the Title 8 Regulations to this dispute and the stringent protections afforded to the Debtor under the Malpractice Protective Order and Asylum Protective Order, this appeal does not rise to the level of importance necessary to grant mandamus relief.

### B.  No Privilege Will Be Lost Absent Mandamus Relief

47.     Here, the Debtor's asylum application is not privileged, and thus there is no basis for extraordinary mandamus relief to prevent the loss of any such privilege. The Debtor purports to rely, in part, on paragraph 4 of the Privileges Consent Order to support his argument that he retains the ability to assert some privilege over his asylum application. (*See* Motion at ¶ 10). Paragraph 4 of the Privileges Consent Order states, in relevant part,

> Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (***other than documents related to the [Malpractice Action] that relate to the merits of the legal malpractice action***, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, which does not relate to the substance of the asylum application). The Trustee and the Debtor reserve all rights with respect to any privileges claimed over such other matters.

(*See* Privileges Consent Order at ¶ 4 (emphasis added)).

48.     The Debtor's argument is fundamentally flawed because paragraph 4 of the Privileges Consent Order, by its terms, only applies to documents that are privileged in the first instance.  The Bankruptcy Court expressly found that "in accordance with the provisions [of the Privileges Consent Order], the Motion for Summary Judgment and the Asylum Application are 'documents related to the [Malpractice Action] that relate to the merits of the legal malpractice action.'"  (Asylum Protective Order at 2).  That the Debtor's asylum application is not privileged is not in dispute—it was filed with the government years ago—and counsel for the Debtor has admitted it is not privileged.[19]  Accordingly, the mandamus inquiry should end here, as the Asylum Protective Order does not even raise a question that might involve the loss or waiver of any privilege, and the Bankruptcy Court disposed of the Debtor's arguments that the Privileges Consent Order somehow supports a contrary result.

49.     Moreover, even if the Debtor's asylum application was privileged (it is not), that privilege is controlled by the Trustee.  Paragraph 4 of the Privileges Consent Order carves out documents related to the merits of the Malpractice Action, and distinguishes documents related to the merits of the Malpractice Action from documents concerning the merits of the Debtor's asylum

---

[19] Luft Decl., **Exhibit D at D-7**, email from Aaron Romney to John Storino, John Cesaroni, Stephen Kindseth, and Eric Henzy, among others (Oct. 27, 2022, 10:35  EST).

application. This carve out was included in paragraph 4 of the Privileges Consent Order to ensure that the Debtor could not assert privilege over documents relating to the Trustee's ability to evaluate the Malpractice Action, an asset controlled by the Trustee.  The Debtor cannot in good faith deny that the Debtor's asylum application relates to the merits of the Malpractice Action— indeed, the Debtor's core allegation in the Malpractice Action is that the Asylum Application was made public following a hack of Clark Hill's computer systems, and one of Clark Hill's main defenses to the Malpractice Action is that the contents of the Asylum Application were already public prior to any hack. The Asylum Application and its contents are thus directly at issue in the Malpractice Action.

### C.  Asylum Protective Order Does Not Undermine Any Privilege

50.    For the same reasons that no privilege could be lost as a result of the Asylum Protective Order's effectiveness, the resolution of this interlocutory appeal will not avoid the development of discovery practices or doctrine undermining any privilege—there is no privilege at issue in this dispute.  The manufacture of speculative future harm, based on non-existent privileges, should not be confused for the intransigence by a Debtor willing to burden this Court and others in his quest to stop the marshalling of his assets for the benefit of creditors by the Trustee.

### <u>Conclusion</u>

51.    For all the foregoing reasons the Trustee respectfully submits that the Motion should be denied.

Dated:    December 27, 2022        LUC A. DESPINS,
           New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 781-2847
     plinsey@npmlaw.com

       *and*

     Nicholas A. Bassett *(pro hac vice)*
     PAUL HASTINGS LLP
     2050 M Street NW
     Washington, D.C., 20036
     (202) 551-1902
     nicholasbassett@paulhastings.com

       *and*

     Avram E. Luft *(pro hac vice)*
     Douglass Barron *(pro hac vice)*
     PAUL HASTINGS LLP
     200 Park Avenue
     New York, New York 10166
     (212) 318-6079
     aviluft@paulhastings.com

     *Counsel for the Chapter 11 Trustee*